FILED

2009 Jun-08  AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **THSIA BRIGGINS, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| **v.** ] | **CV-08-BE-1861-E** |
| ] | |
| **TRI STAFFING, INC., et al.,** ] | |
| ] | |
| **Defendants.** ] | |
| ] | |

**MEMORANDUM OPINION**

This case comes before the court on "Plaintiffs' Motion for an Order Conditionally

Certifying Class and Permitting Court Supervised Notice to Employees of their Opt-In Rights

and Incorporated Memorandum of Law" (doc. 30). The parties have fully briefed the motion, and

the court has reviewed the filings and the applicable law. The Plaintiffs seek conditional

certification of the case as a collective action under the Fair Labor Standards Act (FLSA), 29

U.S.C. § 216(b). The Plaintiffs also move the court to authorize notice to be delivered to all

current and former hourly Elwood TRI employees who have been assigned to work as process

associates with Honda within the three years prior to the filing of this case. For the reasons stated

below, the court will grant the Plaintiffs' motion for conditional class certification (doc. 30) and

authorizes notice to be given to the putative opt-in class. The court will enter a separate order to

that effect simultaneously.

1

**FACTS**[1]

Plaintiff Thsia Briggins filed suit against Defendants alleging unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA). Plaintiff specifically seeks payment for time she contends she worked prior to the start of her shift and during unpaid meal breaks. Plaintiff seeks to conditionally certify a collective action on behalf of herself and all "current and former hourly paid Elwood employees: 1) who in the last 3 years worked production support day or night shifts at the Honda facility in Lincoln, Alabama; 2) who worked at least 37.50 hours in any week; 3) manufacturing Honda vehicles in Building 1 or Building 2."[2] Since the filing of the Complaint, 193 current and former production workers have filed consents to join this litigation as party Plaintiffs.

Defendant Honda's Lincoln, Alabama, facility employs approximately 4,500 associates and consists of two separate production lines – a Stamping facility and an Engine plant. Defendant Elwood TRI is a staffing agency that fills open jobs at Defendant Honda's Lincoln facility. Elwood TRI associates are assigned to perform multiple tasks on the assembly line.

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for conditional certification purposes only. They may not be the actual facts. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001) (stating that factual determinations should be made during the second-tier evaluation of collective action certification, usually on a motion for decertification); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1238 (S.D. Ala. 2008) ("factual disputes may properly be addressed after discovery at the second stage of the FLSA collective action process . . . , but they do not constitute a valid basis for denying conditional class certification").

[2] Plaintiff specifically excludes from the proposed class those employees who work or worked as clerical support, Equipment Service Associates (ESAs), Team Coordinators (TCs), and those who work or worked three shifts in Die Cast, Stamping, Pain Injection/Mold, and Machining.

2

These associates remain employees of Elwood TRI throughout their temporary assignments at Honda, and Elwood TRI controls the hiring, pay, benefits, discipline, and termination of these associates. Temporary associates assigned to work as Process Associates at Honda are engaged in daily activities involving the assembly of the Honda Pilot, Honda Odyssey, and engines. They are assigned to different departments throughout the plant, have different job duties, and are subject to different management and timekeeping practices.

Clock-in procedures, paid pre-shift work, meal times, and uniform requirements at Defendant Honda's Lincoln facility vary by department and zone. Temporary associates assigned to the Lincoln facility work different shifts, and they rotate between shifts every two weeks. Some departments operate two shifts, while others operate three shifts.[3] Defendants assert an associate is not supposed to perform work before the start of his or her scheduled shift.

At the start of each shift, associates swipe their identification cards at a time clock located near the department to which they are assigned. These swipes are used to track attendance, not time. After associates clock in, they are not required to report to their department unless their scheduled shift is starting at that time or they have been assigned paid pre-shift work by the Honda Team Manager. Defendants assert that many temporary associates clock in and engage in a variety of personal activities, such as eating a meal, drinking coffee, or reading the newspaper, before reporting to their work area. Plaintiff asserts that she and the putative class members were required to perform work prior to the beginning of the shift and, indeed, were trained to perform such work prior to the beginning of the shift.

---

[3] Plaintiffs seek to conditionally certify a class of employees who work or worked the two-shift schedule.

3

Defendants concede that some departments designate certain associates as "pre-shift associates," who are responsible for performing pre-shift work to ready the area for production. These associates begin working 15 to 30 minutes prior to each shift to prepare the zone for production by laying out tools, calibrating equipment, performing torque checks, completing run charts, and other preparatory tasks. These associates are paid for their "pre-shift" work, and if that "pre-shift" work results in the associate working more than 8 hours in a day, the associate is paid 1.5 times the regular hourly rate for such additional time. Plaintiff asserts that all hourly employees were required to perform pre-shift work, and that all hourly employees, including the designated "pre-shift associates," were required to perform work during unpaid meal breaks.

Defendants assert that Elwood TRI associates on assignment at Honda are paid 1.5 times their regular hourly rate for all hours worked in excess of eight hours per day, Monday through Friday. Defendants assert that Elwood TRI associates are paid 1.5 times their regular hourly rate for all hours worked on Saturdays outside of a shift's regularly scheduled time. Defendants also assert that Elwood TRI associates are paid 2 times their regular hourly rate for all hours worked on Sundays outside of a shift's regularly scheduled time.

All associates, Honda and Elwood TRI, are and have been given an unpaid 30-minute meal break each day, usually at the midpoint of their shift. Defendants assert that associates are not required to perform work during their meal break. Plaintiff asserts that she and the putative class members were required to perform work during the meal break. The time of this meal break varies based upon shift schedules, department, and production needs.

Elwood TRI associates assigned to work as Process Associates at Honda are assigned to work in 8 different departments on 2 separate lines, including Assembly Frame, Engine

Assembly, Die Cast, Machining, Paint/Injection Mold, Production Materials Control (PMC), Stamping, Weld, and Vehicle Quality. Associates perform different processes depending on the department and, within that department, the zone or area to which they are assigned. Associates are also subject to different schedules and overtime requirements depending on the line, department, and zone to which they are assigned.[4]  Plaintiff seeks to represent a class of only those Elwood TRI associates assigned to the two-shift schedule in Assembly Frame, Engine Assembly, Paint, PMC, Weld, and Vehicle Quality. Associates also may be assigned different times for unpaid meal breaks, depending upon the department to which they are assigned and the day's production schedule.

Plaintiff Briggins asserts that she and others like her performed work – such as setup, calibrations, torque checks, charting, lot controls, stocking parts bins, and maintaining protective equipment – off the clock without pay pre-shift or during unpaid meal breaks. Plaintiff asserts that Elwood TRI associates were trained and instructed to perform these activities off the clock. Plaintiff also asserts that if employees did not complete these tasks before the start of their shift, they would be written up for stopping the line.

## LEGAL STANDARD

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that "any one or more employees similarly situated" may maintain an action against an employer for violations of the FLSA. Section 16(b) further provides that "[n]o employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in

---

[4] Associates working in Assembly Frame, Engine Assembly, Paint, PMC, Weld, and Vehicle Quality work a two-shift rotation. Associates in Die Cast, Stamping, Paint/Injection Mold, and Machining work a three-shift rotation.

the court in which such action is brought." The Eleventh Circuit has held that "[t]he 'opt-in' provisions of [29 U.S.C. 216(b)] convey upon a named plaintiff . . . the right to try to seek damages in the amounts allegedly due and not paid by the employer in accordance with the [FLSA], on behalf of himself or herself and also on behalf of other employees 'similarly situated.'" *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). The FLSA "opt-in" procedure was created "to serve the interests of judicial economy through resolution in a single proceeding of claims stemming from common issues of law and fact and to aid in the vindication of plaintiffs' rights by lowering the individuals' costs with a pooling of claims and resources." *Bernard v. Household Int'l*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).

A plaintiff bears the burden of demonstrating a "reasonable basis" for his claim of class-wide harm. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)). A plaintiff "may meet this burden, which is not heavy, by making substantial allegations of class-wide [harm], that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Id.* (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406-07 (D.N.J. 1988).

The Eleventh Circuit recommends that district courts adopt a two-tiered approach to notification and certification of opt-in collective actions under 29 U.S.C. § 216(b), addressing at two different stages the question of whether plaintiffs are "similarly situated." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001). The Eleventh Circuit, quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), described the two-tiered approach as follows:

> The first determination is made at the so-called "notice stage." At the

notice stage, the district court makes a decision -- usually based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives -- i.e. the original plaintiffs -- proceed to trial on their individual claims.

*Hipp*, 252 F.3d at 1218-19.  The Eleventh Circuit noted that the "two-tiered approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases." *Id.* at 1219.  The Eleventh Circuit, however, also noted that "[n]othing in our circuit precedent . . . requires district courts to utilize this approach. The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court." *Id.*

To prevail on a motion seeking conditional certification of a collective action, a plaintiff must show that (1) other employees exist who desire to opt-in and (2) the employees are similarly situated with respect to their job requirements and pay provisions. *Hipp*, 252 F.3d at 1219; *Dybach*, 942 F.2d at 1567-68. The "similarly situated" requirement of 29 U.S.C. § 216(b) "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F.3d at 1095. To show that other employees are "similarly situated" for purposes of first-tier consideration for conditional certification, plaintiffs "need only show

7

that their positions are similar, not identical, to the positions held by the putative class members."

*Hipp*, 252 F.3d at 1217 (citing *Grayson*, 79 F.3d at 1101).  "[A] unified policy, plan, or scheme .

. . may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)."

*Grayson*, 79 F.3d at 1095.

## DISCUSSION

Utilizing the two-tiered approach employed by the Eleventh Circuit, the court will

consider (1) whether other employees exist who desire to opt-in, and (2) whether the employees

are similarly situated with respect to their job requirements and pay provisions. *Hipp*, 252 F.3d at

1219; *Dybach*, 942 F.2d at 1567-68.

## I.       Others Desire To Opt-in

Plaintiff Briggins asserts that other Elwood TRI associates assigned to Honda will want to

opt-in to this case. In support of his assertion that others would opt-in, Plaintiff Briggins points to

the 193 consents filed by former and current employees who desire to opt-in to this suit. Where

"consents to [participate in the] suit [have] already [been] filed" district courts in the Eleventh

Circuit have found that, "for purposes of deciding [a] motion for conditional collective action

certification," the already-filed consents to opt-in established "that there were persons . . . who

would join in [the] suit if they had notice of the suit." *See Barron v. Henry Cty. School Sys.*, 242

F. Supp. 2d 1096, 1101 (M.D. Ala. 2003). The court finds that the Plaintiff has met the first

requirement for conditional collective action certification, because 193 other employees have

lodged notice with this court of their desire to opt-in to this suit.

## II.      Others are Similarly Situated

Plaintiff Briggins asserts that the court should conditionally certify a collective action, because she is similarly situated to other hourly employees who were subjected to the following alleged FLSA violations: "off the clock" pre-shift work and "off the clock" work during unpaid meal breaks. The Defendant asserts that Plaintiff is not similarly situated to the putative opt-ins, because they worked different types of schedules in different departments, they worked different positions for different rates of pay, and they worked subject to different shift policies and procedures.

The "similarly situated" requirement of 29 U.S.C. § 216(b) "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F.3d at 1095. To show that other employees are "similarly situated" for purposes of first-tier consideration for conditional certification, plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (citing *Grayson*, 79 F.3d at 1101). Plaintiffs can meet the burden of showing members of a class are "similarly situated" by "'making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363-65 (M.D. Ala. 1999) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Defendants assert that Plaintiff Briggins and the putative class members are not similarly situated, because they held different job positions in different departments with different duties. To be "similarly situated" for the purpose of conditional certification, however, the employees need not have identical job titles and duties. *See, e.g., Harper*, 185 F.R.D. at 363-65 (conditionally certifying a class that included servers, cooks, hostesses,  food preparation

workers, and busboys); *see also Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (conditionally certifying a collective action involving employees from seven different Starbucks locations in four different states).

In *Harper v. Lovett's Buffet*, the Middle District of Alabama conditionally certified a class of *all* hourly employees of the defendant's restaurant, because the plaintiffs had produced affidavits of fifteen employees reflecting that the defendant may have clocked out servers, cooks, hostesses, food preparation workers, and busboys without their knowledge. 185 F.R.D. at 362. The Middle District of Alabama determined that the affidavits, though from employees holding different positions, supported the inference that the defendant's alleged unlawful practice extended to all types of hourly employees. *Id.*

Similarly, in this case employees working in different positions have filed notices of their desire to opt in, and Plaintiff Briggins has presented affidavits from Elwood TRI associates working in different positions at the Honda facility. The affidavits and notices show that a broad range of Elwood TRI associates working at the Honda facility could have been affected by the alleged misconduct of Defendants. The court, therefore, determines that Plaintiff Briggins has made a "modest factual showing" sufficient to establish, under the fairly lenient standard for conditional certification under the two-tier *Hipp* approach, that she is similarly situated to other potential opt-in class members.

Defendants also asserts that Plaintiff Briggins and the putative class members are not similarly situated, because no common unlawful policy or scheme resulted in the alleged unpaid

work, and because individual determinations predominate.[5] Specifically, Defendants allege that company policy does not require process associates to work pre-shift or during their unpaid meal breaks. Nevertheless, Plaintiff Briggins and the twelve declarants whose affidavits are attached to Plaintiff's motion for conditional certification assert that they were not only required to perform work off the clock, they were also trained to perform such work off the clock before the beginning of each shift or during the meal break. As a sister judge on this court has recently noted, a defendant's failure "to adequately address <u>its ability to effectively enforce</u> its company-wide mandate that such practices [as allowing or requiring off the clock work by hourly associates] are unacceptable under the FLSA" is sufficient evidence at the conditional certification stage to sustain a finding that potential class members are similarly affected by a common policy, plan, or scheme. *Burroughs v. Honda Manufacturing of Ala., LLC*, Case No. 1:08-CV-1239-VEH, Memorandum Opinion and Order, at 14 (Apr. 6, 2009) (emphasis in original).

The court finds that Plaintiff Briggins has carried her fairly lenient burden for the notice stage[6] by making "a substantial showing that all [hourly] employees are treated similarly and are

---

[5] The court notes that Defendants arguments raise factual matters not appropriate for consideration at this notice stage of the litigation. *See Pendlebury*, 2005 WL 84500, at *3 (citing *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery.")).

[6] The court notes, however, that this conditional certification is based on a preliminary finding that the named, individual Plaintiff and the putative class are similarly situated. Subsequent discovery may reinforce or undermine this finding. If discovery reveals that Plaintiff and the members of the conditionally certified class are not similarly situated, Defendants may move to "decertify" the class. *See Harrison v. Enterprise Rent-A-Car Co.*, No. 98-233-CIV-T-24(A), 1998 WL 422169, at *3 (M.D. Fla. July 1, 1998).

subject to the same pay practices and policies with regard to 'off the clock' work . . . and unpaid

work/interruptions during meal breaks." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1238

(S.D. Ala. 2008).[7]

      In addition to the court's finding that conditional certification is proper under the first tier

of the *Hipp* analysis, the court also finds that a collective action in this case would be beneficial

and judicially efficient, as is the goal of proceeding under section 16 of the FLSA:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to
> vindicate rights by the pooling of resources. The judicial system benefits by
> efficient resolution in one proceeding of common issues of law and fact arising
> from the same alleged . . . activity.

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

## CONCLUSION

      The court in its discretion will grant the motion for conditional certification of a

collective action. The court, accordingly, authorizes the Plaintiff to give notice of this lawsuit to

the putative class, consisting of those hourly Elwood TRI associates who work or worked the

two-shift schedule at Honda's Lincoln facility in Assembly Frame, Engine Assembly, Paint,

PMC, Weld, and Vehicle Quality during the three years preceding the filing of this lawsuit to the

present. That class will be conditionally certified, and members of the class will be given the

opportunity to opt in to the lawsuit.

---

    [7] At most, Defendants evidence and arguments "may create disputes of fact as to whether all hourly employees are or are not subject to the same policies. Those factual disputes may properly be addressed after discovery at the second stage of the FLSA collective action process . . . , but they do not constitute a valid basis for denying conditional class certification today." *Longcrier*, 595 F. Supp. 2d at 1238.

12

Both Plaintiff and Defendants have submitted proposed notice forms, and Defendants have stated objections to portions of the Plaintiff's proposed notice. The court will order the parties to work together in good faith and file a joint proposed notice of right to opt in and joint proposed consent to join **by Monday, June 22, 2009.**

The court will further order Defendants to provide Plaintiff with the names, last known physical addresses, and last four digits of social security numbers for all individuals in the putative FLSA collective action **by Wednesday, July 8, 2009.** Once the notice and consent forms have been finally approved by the court, Plaintiff shall provide notice by First Class Mail to all additional putative opt-in collective action plaintiffs.

DATED this 8th day of June, 2009.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE