FILED
2013 Jan-17  PM 09:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| THSIA BRIGGINS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **1:08-CV-1861-KOB** |
| ELWOOD TRI, INC. and ) | |
| HONDA MANUFACTURING OF ) | |
| ALABAMA, LLC, ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY PENDING APPEAL AND, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

Defendants Elwood TRI, Inc.[1] ("Elwood") and Honda Manufacturing of Alabama, LLC ("HMA") (collectively "Defendants"), in opposition to Plaintiffs' Motion to Stay Pending Appeal[2] (Doc. 201), state as follows:

---

[1] Elwood TRI, Inc. is properly identified as Elwood Staffing Services, Inc.

[2] Plaintiffs' Motion effectively only seeks a stay in Thsia Briggins's individual case. The Court severed each of the remaining individual plaintiffs into individual cases and consolidated them only for discovery purposes. *See* Doc. 166, pp. 40-41. *Briggins'* Motion seeks to stay all proceedings, not just discovery, and so, the Motion effectively only seeks to stay the proceedings of Briggins's individual case.

# TABLE OF CONTENTS

**Page**

INTRODUCTION……………………………………………………4

PROCEDURAL BACKGROUND……………………………………...5

ARGUMENT………………………………………………………8

I.      Plaintiffs' Motion to Stay Should be Denied………………………..8

    A.      Plaintiffs' Motion to Stay is Untimely and Prejudicial………………8

    B.      Plaintiffs Have Failed to Satisfy Their Burden to Stay
        Discovery Pending Appeal…………………………………………..10

        1.      Plaintiffs Have Failed to Demonstrate a Substantial
               Likelihood That They Will Prevail on Appeal………………11

               a.      Plaintiffs Cannot Demonstrate an Abuse of Discretion….12

               b.      The Decertification Order Cannot Be Clearly Erroneous..13

                    i.  Plaintiffs' *Mt. Clemens Pottery Reliance Is Misplaced*..13

                    ii.  A Common Legal Question of "Work" Does Not
                         Exist of Cause Similarly Situatedness………………...15

                    iii.  Plaintiffs, Not this Court, Applied the Incorrect
                         Standard…………………………………………………18

                    iv.  Plaintiffs Have Cited No Authority Supporting A
                         Stay………………………………………………...21

                 c.      The Eleventh Circuit Lacks Jurisdiction of the Appeal….21

               2.      The Plaintiffs Have Not Shown a Substantial Risk of
                Irreparable Injury………………………………………………..24

               3.      A Stay Will Substantially Prejudice the Defendants…………25

               4.      A Stay is not in the Public Interest…………………………...25

5.      Plaintiffs' Delay in Seeking the Stay Weights in Favor of its Denial………………………………………………………26

III.    Plaintiff's Unidentified Requests for Protective Order Should be Denied...26

CONCLUSION……………………………………………………………27

## INTRODUCTION

In its thorough and well-reasoned opinion, this Court recognized that " [b]y decertifying the class, the court is saving the parties the time and expense of trying to litigate a case collectively that should have been litigated individually at the outset." Doc. 166, p. 40.  Now, ten months later and more than four months after filing notice of appeal, Plaintiffs seek to delay further the resolution of the individual Plaintiff claims which are already seven years old in some cases. Plaintiffs offer no explanation for their five-month delay in filing this motion, during which Defendants have incurred significant fees and expenses diligently pursuing discovery in the individual cases pursuant to the Court's deadlines.  Their request for a stay relies entirely upon their appeal of a decertification order, subject to an abuse of discretion standard, which are rarely, if ever,[3] reversed.  In their appeal, they raise only arguments they failed to make in opposing decertification, which Judge Hopkins already rejected, and fail to mention the applicable Eleventh Circuit "similarly situated" standard.  Because Plaintiffs' motion to stay is untimely, prejudicial, and because they fail to satisfy or even address any of the four elements required for the stay, their Motion must be denied.

---

[3] Defendants are not aware of any Circuit Court reversing a district court's order granting decertification in a Fair Labor Standards Act § 216(b) collective action.  Plaintiffs fail to cite any such cases.

## PROCEDURAL BACKGROUND

1.      On October 8, 2008, Thsia Briggins filed a complaint on behalf of herself and purportedly on behalf of other similarly situated individuals alleging that the Defendants had violated the Fair Labor Standards Act (FLSA), 29 U.S.C § 201, *et seq.* (Doc. 1), for three years prior to the filing of the Complaint.

2.      After initial class certification on June 8, 2008 (Doc. 40), on August 25, 2011, the Defendants filed a motion to decertify the collective action class, (Doc. 99), which this Court granted on March 29, 2012, (Docs. 166, 167).

3.      The Court severed the Plaintiffs into individual lawsuits and ordered each Plaintiff to pay the filing fee by May 31, 2012 (Doc. 167 at 1), and also warned Plaintiffs that failure to pay the filing fee would result in dismissal with prejudice on June 1, 2012 (*Id.*) (the court later extended that deadline until July 16, 2012 (Doc. 172).

4.      On August 15, 2012, this Court dismissed with prejudice the claims of 249 former opt-in Plaintiffs who had not paid the filing fee. (*See* Docs. 191, 191-1, 192, 191-2).

5.      On August 24, 2012, Judge Armstrong entered an Order accepting the Defendants' discovery schedule, which provided for individualized discovery in each of the individual Plaintiff cases including depositions, interrogatories, requests for admission, and requests for production of documents.  (Doc. 193.)

6.     On September 14, 2012, the former opt-in Plaintiffs who had been dismissed with prejudice filed a Notice of Appeal. (Doc. 194); the appeal was docketed in the United States Court of Appeals for the Eleventh Circuit, and the Plaintiffs' deadline for filing their initial brief was October 29, 2012. (Exh. A).

7.     After the parties exchanged Fed. R. Civ. P. 26(a) initial disclosures on September 27, 2012, on October 5, 2012, Defendants began serving written discovery on the individual Plaintiffs who had not been dismissed for failing to pay the filing fee. (*See* Doc. 200 ¶ 1; Doc. 200-1)

8.     On October 17, 2012, the dismissed former opt-in Plaintiffs sought a thirty-day extension for filing their initial appellate brief. (Exh. B). Judge Frank J. Wilson granted that extension on October 22, 2012. (Exh. C).

9.     On November, 2 2012, Defendants contacted Plaintiffs' counsel via email and began seeking dates on which individual Plaintiffs would be available to be deposed in December and January. (Exh. D).  Defendants did not receive a response to the request for dates for the deposition until December 3, after further requests for dates had been made.

10.    On November 20, 2012, the dismissed former opt-in Plaintiffs sought another thirty-day extension for filing their initial brief. (Exh E). Judge Frank J. Wilson granted a second extension on November 21, 2012. (Exh. F).

11.    On November 27, 2012, Judge Armstrong granted the Defendants' motion to extend the initial phase of discovery through April 30, 2013.

12.    On December 14, 2012, the individual Plaintiffs who been served with written discovery submitted collective objections to the discovery requests.  On December 21, 2012, the individual Plaintiffs filed individual objections with little if any substance in response to Defendants' written discovery requests. Those responses are the subject of Defendants' Motion to Compel filed on December 23, 2012. (Doc. 200).

13.    On December 19, 2012, the Defendants noticed the deposition of 196 Plaintiffs in the severed cases, which have been consolidated for purposes of discovery. Those depositions are scheduled to begin on January 22, 2013 and last until April 2013. In noticing the depositions, counsel for Defendants notified counsel for Plaintiffs that Defendants were willing to work with the Plaintiffs regarding individual scheduling conflicts for the depositions

14.    On December 28, 2012, the dismissed former opt-in Plaintiffs finally filed their initial brief in the Eleventh Circuit.

15.    On January 14, 2013—291 days after decertification was granted, 122 days after filing their notice of appeal, 101 days after Defendants began serving written discovery requests, 73 days after Defendants asked for dates for depositions, and only 8 days before depositions are scheduled to begin—Plaintiffs

finally filed this Motion to Stay Pending Appeal and, in the Alternative, for Protective Order. (Doc. 201).

## ARGUMENT

Plaintiffs Motion to Stay must be denied, because (1) it is untimely, (2) it would be prejudicial to defendants, and, (3) because Plaintiffs have failed to establish any of the elements of a stay of discovery pending appeal, including the requirement that Plaintiffs demonstrate a likelihood of success on the appeal, which Plaintiffs cannot do.  Plaintiffs' mention of a request for a Protective Order in the Motion's introduction must be denied because Plaintiffs have failed to describe the nature of the protective order they seek or why it should be granted.

## I.   Plaintiffs' Motion to Stay Should Be Denied.

Plaintiffs' Motion to Stay is untimely.  Granting it would greatly prejudice defendants.  For a court to grant a Motion to Stay Pending Appeal, Plaintiffs must satisfy four elements.  Plaintiffs can satisfy none.

### A.   Plaintiffs' Motion to Stay Is Untimely and Prejudicial.

First of all, the individual Plaintiffs' Motion to Stay should be denied because it is untimely.  Plaintiffs' Motion provides no explanation for their 152-day delay in filing the Motion to Stay after the dismissal of the opt-in Plaintiffs who did not pay a filing fee.  Despite the Plaintiffs' efforts to avoid the discovery that is required to resolve the individual Plaintiffs' claims, the individual Plaintiffs have known since Judge Armstrong's Order on August 24, 2012 that individual

depositions and discovery requests would be required to resolve the claims.  Since that date, Defendants have diligently pursued discovery of the individual Plaintiffs' claims pursuant to the Scheduling Order, but Plaintiffs have made no effort to participate in such discovery.  Instead, Plaintiffs waited until after they received two thirty-day extensions to file their appellate brief to seek the stay of discovery, presumably fearing that the extensions would not be granted if discovery were stayed pending the appeal's resolution.

Granting a stay after Plaintiffs' unreasonable delay would greatly prejudice Defendants.  As stated above, over the past five months, Defendants have expended fees and expenses pursuing discovery, preparing for depositions, and preparing defense of the individual cases.  To date, because of Plaintiffs' attempts to thwart the court-authorized discovery, these efforts have yielded no depositions and no substantive discovery responses.  Staying the case for several months would require Defendants to expend duplicative fees and expenses to resume the discovery and case preparation in which they have already been engaging.

Defendants will also be prejudiced by the further passage of time.  The overtime claims in the individual cases, in some instances, begin in 2005.  More than three years were wasted while Plaintiffs pursued a collective action for claims that should have been filed individually in the first place.  Now, Plaintiffs seek to delay the resolution of the individual claims even more by staying these cases

while they pursue an appeal which will ultimately prove unsuccessful.  If stayed, more time will pass, and Defendants will have to depose Plaintiffs and secure witnesses regarding events that occurred seven or eight years ago.  As many of the Elwood Plaintiffs were only employed for a few months, locating witnesses who remember the employees and can testify regarding their work will be made more difficult.

This Court must stop Plaintiffs' delay tactics.  Ten months ago, this Court correctly concluded that individual resolution of each Plaintiff's claims was needed as a matter of law and based on fairness to the parties and procedural considerations.  Plaintiffs' Motion to Stay is the latest example of their ongoing efforts to preserve collective resolution of claims that should have been filed individually at the outset.  Defendants have already been prejudiced by these efforts enough, and an untimely stay will only result in further prejudice.

**B.    Plaintiffs Have Failed to Satisfy Their Burden to Stay Discovery Pending Appeal.**

For a court to grant the extraordinary remedy of a motion to stay discovery pending appeal, the moving party must establish (1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury absent a stay; (3) the absence of substantial harm to other parties in interest;

and (4) and the absence of harm to the public interest.[4]   "A stay pending appeal is

an 'extraordinary remedy' 'for which the moving party bears a "heavy burden."'[5]

Plaintiffs have not established any of the elements of a stay pending appeal under

any burden, especially a heavy one.   Furthermore, balancing the equities requires

denying the stay.  Thus, their Motion must be denied.

### 1.   *Plaintiffs Have Failed to Demonstrate a Substantial Likelihood  that They Will Prevail on Appeal.*

Plaintiffs have failed to demonstrate a likelihood of the appeal's success.  On

the contrary, it is clear that the appeal will fail.  Even assuming *arguendo that*

plaintiffs' three appeal arguments (which were not made at the decertification

stage) were valid, they would not satisfy the "abuse of discretion" standard

justifying a reversal.  Each argument ignores the applicable standard and the facts

of the case.  Plaintiffs ignore entirely the similarly situated standard and the three

*Anderson v. Cagle's* factors for decertification, which this Court analyzed in detail

in decertifying the case.  Plaintiffs have failed to identify a single case where

---

[4] *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000); *accord United States v. Alabama*, No. 2:11-CV-2746-SLB, 2011 WL 4582818, at *1 (N.D. Ala. Oct. 5, 2011) (quoting *Touchston*, 234 F.3d at 1132; *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. Under both Rules, however, the factors regulating the issuance of a stay are generally the same . . . .") (citation omitted).

[5] *Alabama*, 2011 WL 4582818, at *1 (quoting *Touchston*, 234 F.3d at 1132; *Gay Lesbian Bisexual Alliance v. Sessions*, 917 F. Supp. 1558, 1561 (M.D. Ala. 1996)).

decertification of an FLSA collective action was reversed.  Finally, plaintiffs are

unlikely to be able to establish the Eleventh Circuit's jurisdiction.

> a.     *Plaintiffs Cannot Demonstrate an "Abuse of Discretion."*

Plaintiffs argue that this Court should stay proceedings pending appeal

because this case involves a "close question" and because the Court's decision is

allegedly based on "errors of law." (*See* Doc. 201 at 2–3). The Plaintiffs' first

argument disregards the standard of review on appeal. On appeal, the Eleventh

Circuit will review this Court's decertification order only for an abuse of discretion.

*Anderson v. Cagle's, Inc.*, 488 F.3d 945, 951 (11th Cir. 2007). The Eleventh

Circuit has said:

> The application of an abuse-of-discretion review recognizes the range
> of possible conclusions the trial judge may reach.
>
>> By definition . . . under the abuse of discretion standard
>> of review there will be occasions in which we affirm the
>> district court even though we would have gone the other
>> way had it been our call. That is how an abuse of
>> discretion standard differs from a *de novo* standard of
>> review. As we have stated previously, the abuse of
>> discretion standard allows "a range of choice for the
>> district court, so long as that choice does not constitute a
>> clear error of judgment."

*United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (quoting *Rasbury v.*

*I.R.S. (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994). In other words, "close

questions" are not reversible on review for abuse of discretion, even when the

Court of Appeals might have "gone the other way." *Id.* Instead, abuse of discretion

review requires the Court of Appeals to affirm unless the District Court's ruling is "a clear error of judgment." *Frazier*, 387 F.3d at 1259 (quoting *Rasbury*, 24 F.3d at 168).  Plaintiffs have failed to demonstrate any reason under the Eleventh Circuit similarly situated standard that this Court's ruling was clearly erroneous.

> b.     *The Decertification Order Cannot Be Clearly Erroneous.*

Plaintiffs' three appeal arguments ignore the similarly situated standard, the Eleventh Circuit's three-factor test, and the Court's determination that the plaintiffs cannot establish common liability.  Instead, the plaintiffs leapfrog liability and look to damages, improperly focus on the single factor of "work" ignoring all others, and create their own decertification standard.   As this Court's order carefully examined the three *Cagle's* factors, the decertification decision cannot be clearly erroneous, and plaintiff's Motion must be denied.

> i.   <u>Plaintiffs' *Mt. Clemens Pottery* Reliance Is Misplaced.</u>

Plaintiffs' argument that this Court's decision rests on errors of law is itself based on an error of law; Plaintiffs misread or misunderstand the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). Plaintiffs argue that the first common question of law is whether the Defendants' timekeeping system violates the FLSA because it does not record pre-shift time spent gather or calibrating tools. (Doc. 201 at 7). And they argue that, under *Mt. Clemens Pottery*, individual-by-individual testimony is not required to show how

much pre-shift time was worked. (*Id.* at 7–8). The problem with Plaintiffs' argument is that it presupposes something that the Defendants contest: that *every* employee engaged in pre-shift activities.

There is record evidence that strongly supports a conclusion that certain individual opt-in Plaintiffs (out of the small percentage of Plaintiffs who have been deposed) did not perform any pre-shift activities (whether or not they can be defined as work). (*See* Doc. 101 at 39 n.133). In other words, liability to the individual Plaintiffs was and is very much in dispute. And based on that dispute and the evidence suggesting that some Plaintiffs did not engage in pre-shift activity, this Court concluded that individual testimony would be required to show *liability* to each Plaintiff. (Doc. 166 at 17, 28–29, 31, 33, 35).

Plaintiffs attempt to obfuscate this by pointing to *Mt. Clemens Pottery* and arguing that they are not required to present individual testimony as to liability. However, *Mt. Clemens Pottery* only states that after an employee shows she (individually) has worked off the clock, she need only present enough evidence to create an inference as to *how much* time she worked off the clock. *Mt. Clemens Pottery*, 328 U.S. at 687. Specifically, the Supreme Court said: "[A]n employee has carried out his burden *if he proves that has in fact performed work for which he was improperly compensated* and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

Again, the *Mt. Clemens Pottery* **burden switch as to record-keeping applies only after liability has been established** and only applies to the calculation of *how much* off-the-clock work was performed. By trying to apply *Mt. Clemens Pottery* to liability, the Plaintiffs do more than put the cart before the horse. They have two carts and no horse at all.

> ii. <u>A Common Legal Question of "Work" Does Not Exist or Cause Similarly Situatedness.</u>

Plaintiffs' second argument, whether activity was "work" is a common question of law, also fails and for similar reasons.   The question of whether activities are "work" is only one of a myriad of questions which must be resolved - the first being whether or not unpaid activities were performed at all.  Even if there was a common legal question as to whether activities are "work," Plaintiffs would not be similarly situated because of all of the other factors required to determine liability vary widely among the Plaintiffs.   And, here, "work" is not a common question of law, because a common legal determination of "work" requires common "sets of facts," which this Court has already determined do not exist among these Plaintiffs.

Plaintiffs' argument presupposes liability—that pre-shift activity took place at all. As this Court has already correctly concluded, the question of whether pre-shift activity took place will require presentation individual evidence and individual defenses. (Doc. 166 at 17, 28–29, 31, 33, 35). If this Court concludes

that an individual Plaintiff did not engage in pre-shift activity, then whether an activity is or is not work is not at issue in his or her case. Therefore, whether an activity is work is not a common question of law shared by all of the opt-in Plaintiffs because there must be individual determinations of whether any such activity occurred.

Further, Plaintiffs have cited to donning and doffing chicken plant cases to support that this Court should resolve the question of whether pre-shift activities are "work." In doing so, Plaintiffs have ignored the material distinction between this case and those. In each of the chicken plant cases, there was a common set of activities employees had to perform before paid time, and those common activities were not compensated as a matter of employer policy. (*See* Doc. 166 at 21). This Court itself noted that these cases were distinct because "HMA associates as a group, were not *required* to perform any preparatory work before the start of their shift." (*Id.* at 22). As this Court has already concluded, whether an HMA associate might feel the need to work before a shift will vary depending upon a number of factors, just as it did in *Lugo v. Farmer's Pride*, 737 F. Supp. 2d 291 (W.D. Pa. 2010).

And, moreover, as this Court has already concluded, that "work" might have a legal definition in some circumstances ignores the numerous individual determinations that would make collective trial impossible: the variety of processes

performed across the plant; whether an individual Plaintiff has performed a given task pre-shift; rotation of the Plaintiffs through various processes and zones during their employment; the individual nature of the *de minimus* defense; and the individual nature of determining the "aggregate amount of compensable time." (*See* Doc. 166 at 33–35). Considering the Court's careful consideration of all of these issues, the Court of Appeals is not likely to conclude that it has abused its discretion.

Additionally, common legal determinations of whether activities are "work" cannot occur here, because common legal determinations require common "sets of facts." *Birdwell v. City of Gadsden*, the case primarily relied on for the common legal determination of "work," is distinguishable, because it states that common legal determinations are appropriate only when there are common sets of facts, which are not present here:

> But the Court could have not meant, as the Fifth Circuit discussed, "that the *same* set of facts may lead to different results, but rather [meant] that the different facts of discrete cases may produce different results." Certain sets of facts, if found by a fact finder, will give rise to liability under the FLSA while other sets of facts will not. It is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist.

*Birdwell v. City of Gadsden*, 970 F.2d 802, 808 (11th Cir. 1992) (citing *Bright v. Houston Northwest Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 675 (5th Cir. 1991)).

### iii.  Plaintiffs, Not this Court, Applied the Incorrect Standard.

Finally, the Plaintiffs argue that this Court applied the wrong standard when it decertified the class. (Doc. 201 at 10–15). The Plaintiffs are wrong. Under the FLSA, plaintiffs may proceed collectively only if they are "similarly situated." *See* 29 U.S.C. § 216(b); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Plaintiffs conveniently but remarkably fail to mention the "similarly situated" standard in their Motion to Stay or their appellate brief.  The Eleventh Circuit has identified a three-factor test to determine whether plaintiffs are similarly situated: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s that] appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Cagle's*, 488 F.3d at 953 (alterations in original) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). Plaintiffs fail to cite this binding test.  The Court's analysis under this standard was supported by substantial factual findings and cannot be clearly erroneous.

This Court examined the disparate factual and employment settings, the first *Anderson* factor, and it concluded that there were material variations in job duties, job requirements, zone management, pay practices, and the use of overtime. (Doc. 166 at 17). The Court noted that different zones varied in the use of parts, the use of tools, the conduct of shift meetings, pay practices, and overtime budgets. (*Id.* at

18–20). The Court also noted that the Plaintiffs themselves testified that there were significant zone-to-zone differences. (*Id.* at 20). Based on those findings, which are unchallenged in the Plaintiffs' Motion or appellate brief, this Court concluded that the Plaintiffs were not similarly situated. (Doc. 166 at 17–18) That finding is a factual finding, subject to reversal only if clearly erroneous. *See Anderson*, 488 F.3d at 953–54; *Hipp*, 252 F.3d at 1208.

This Court next examined the defenses available to the Defendants, the second *Anderson* factor, and concluded that "the various defenses the defendants state they will raise at trial also persuade the court to decertify the case." (Doc. 166 at 36). Examining those defenses, the Court noted the need to present evidence on inconsistencies between a plaintiff's testimony and his or her own time-clock punches or time-clock punches of associates in the same zone and process. (*Id.* at 31). The Court noted the need to present individual testimony to show the knowledge of management. (*Id.*). The need for individual inquiries to determine whether any time allegedly worked was *de minimus* and the "aggregate amount of compensable time," if it existed at all, also informed this Court's decision to find that the Plaintiffs were not similarly situated. That finding is a factual finding, subject to reversal only if clearly erroneous. *See Anderson*, 488 F.3d at 953–54; *Hipp*, 252 F.3d at 1208.

Finally this Court considered fairness and procedural considerations, the third *Anderson* factor. (Doc. 166 at 36–40). It recognized the purpose of the FLSA, but noted that Plaintiffs had not presented a viable strategy for litigating collectively that would not result in trying each Plaintiffs' case individually. (*Id.* at 37). It concluded that the punch-clock records did not afford a reasonable inference of unpaid work time. (*Id.* at 38) Moreover, collective proceedings with representative testimony would either be a "faulty and prejudicial method for finding liability and calculating damages while the defendants are hogtied in presenting their defenses, or would result in individual trials, rendering collective action unmanageable." (*Id.* at 39). Again, those factfindings are not clearly erroneous. *Anderson*, 488 F.3d at 953–54; *Hipp*, 252 F.3d at 1208.

In sum, binding precedent in this Circuit required this Court to apply the three-factor test from *Anderson* to determine whether the Plaintiffs here are similarly situated. This Court did just that, and it concluded based on a reasonable view of the evidence that the Plaintiffs were not similarly situated. That finding will be reviewed for clear error on appeal, and the Court's decertification decision based on that finding is reviewable for abuse of discretion. In light of this Court's application of the correct legal test, it's reasonable view of the evidence, it's unchallenged factual findings, and the deferential standards of review, it is highly unlikely that the Eleventh Circuit will reverse this Court's decertification order.

iv.  Plaintiffs Have Cited No Authority Supporting A Stay.

Plaintiffs have cited no authority justifying a stay of discovery in these circumstances, and other considerations support denying their Motion.  First, the same "error of law" arguments that Plaintiffs present in this motion were also presented to Judge Hopkins in the companion *Burroughs* case. *See Burroughs v. Honda Mfg. of Ala.*, No. 1:08-cv-01239-VEH, Doc. 188 (N.D. Ala. May 24, 2012). Effectively reviewing *de novo*, Judge Hopkins rejected these same arguments and decertified the *Burroughs* class.[6] *See id.*, Doc. 194 (N.D. Ala. July 19, 2012). Second, the Plaintiffs have yet to cite to a case in which any Court of Appeals has reversed a collective action decertification order, and the Defendants have not located one. In light of Judge Hopkins rejection of these same arguments and the Plaintiffs' failure to point to a single successful appeal of a decertification order, this Court should conclude that Plaintiffs have not shown a substantial likelihood they will prevail in their appeal.

     *c.*    *The Eleventh Circuit Lacks Jurisdiction to Hear the Appeal*

Before even reaching the substance of the appeal, the Eleventh Circuit is likely to conclude that it lacks jurisdiction to hear this appeal because the former

---

[6] After decertification in *Briggins*, after the *Burroughs* decertification motion was fully briefed with largely similar evidence to this case,  Judge Hopkins ordered plaintiffs to show cause why *Burroughs* should not be decertified like *Briggins*.  In response, plaintiffs submitted essentially the same argument they make on appeal. *Burroughs*, docs. 188 & 193.  Thereafter, Judge Hopkins rejected plaintiffs' arguments and granted decertification.  Doc. 194.

opt-in plaintiffs lack standing to appeal the decertification order and because allowing the appeal would run afoul of the final judgment rule.

Standing has three elements: "an actual or imminent injury, causation, and redressability." *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012) (quoting *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011)). Here, the appealing former opt-in Plaintiffs lack standing because they cannot show an actual or imminent injury.

The named plaintiff in an FLSA collective action has no *right* to proceed on behalf of the collective action class. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). It would be inconsistent with that holding to conclude that former opt-in plaintiffs have a right to proceed as a collective action class, even absent the participation of the named plaintiff. Therefore, the Eleventh Circuit is likely to conclude that these former opt-in Plaintiffs do not have a substantive right to proceed as a collective action class.

As a result, the only injury these former opt-in Plaintiffs have could suffered by decertification is the loss of the ability to proceed in a collective action—at best a procedural right. And deprivation of a procedural right alone "is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). As a result, the former opt-in Plaintiffs have suffered no injury, leaving them without standing to appeal.

Furthermore, the decertification order is not an appealable final order. *Lusardi v. Lechner*, 855 F.2d 1062, 1067–68 (3d Cir. 1988); *see also Young v. Prudential Ins. Co. of Am.*, 671 F.3d 1213, 1215 (11th Cir. 2012). And the Eleventh Circuit is generally precluded from hearing interlocutory appeals. *See* 28 U.S.C. § 1291; *Wajnstat v. Oceania Cruises, Inc.*, 684 F.3d 1153, 1155 (11th Cir. 2012). Although there are statutory- and rules- based exceptions to the final judgment rule that permit interlocutory appeals in some instances, including class action certification, *see* 28 U.S.C. § 1292; FED. R. CIV. P. 23(f), none of those exceptions include collective action decertification.

Nor does the Court's dismissal with prejudice provide a jurisdictional peg on which the appealing former opt-in Plaintiffs can hang their hats. In nearly every collective action case, the statute of limitations has run on a claim by the time the case is decertified. As such, dismissal of opt-in plaintiffs, even without prejudice, will always be effectively a dismissal with prejudice. *See Harris v. Ci*, No. 11-14690, 2012 WL 5907451, at *1 (11th Cir. Nov. 27, 2012) ("Where a dismissal without prejudice has the effect of precluding the plaintiff from refiling his claim due to the running of the statute of limitations, it is tantamount to a dismissal with prejudice."). If the plaintiffs' dismissal were enough, every decertified collective action case would be immediately appealable—a new exception to the final judgment rule.  As a result, neither this Court nor the Eleventh Circuit should

accept that argument. Doing so "would undermine the policies of judicial efficiency, avoiding piecemeal litigation, and district court independence that are the basis of the final judgment rule" *See State Treasurer of Mich. v. Barry*, 168 F.3d 8, 13 (11th Cir. 1999) (quoting *Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1336 (11th Cir. 1998)).

The rule that "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any state of the litigation may be ventilated," *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), is one of the bedrock principles upon which appellate procedure is based.  Courts should refrain from creating new exceptions to that rule that "would undermine the policies of judicial efficiency, avoiding piecemeal litigation, and district court independence that are the basis of the final judgment rule" *See State Treasurer of Mich. v. Barry*, 168 F.3d 8, 13 (11th Cir. 1999) (quoting *Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1336 (11th Cir. 1998)).

In light of the high likelihood the Eleventh Circuit will conclude it lacks jurisdiction over the appeal, this Court should deny the motion to stay.

### 2.    The Plaintiffs Have Not Shown a Substantial Risk of Irreparable Injury.

Nowhere in Plaintiffs motion do they point to an irreparable injury they will suffer should this Court deny the motion to stay. The closest Plaintiffs' motion

comes to claiming *any* injury are statements that the stay will avoid unnecessary litigation expenses. (*See* Doc. 201 ¶¶ 5, 9). That is not an irreparable injury. *See F.T.C. v. Std. Oil of Cali.*, 449 U.S. 232, 244 (1980) (stating in the context of administrative review: "Mere litigation expense, even substantial and unrecoupable costs, does not constitute irreparable injury.") (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974)).

Furthermore, the FLSA has a fee-switching provision. *See* 29 U.S.C. § 216(b). Should any of the individual Plaintiffs ultimately prevail and recover from the Defendants, they may be able to recover whatever additional costs are created by their individual responses to written discovery and depositions. Finally, it is common knowledge that in these types of cases plaintiff's counsel expects to recover its fees and costs from the defendant, and not the plaintiff. Generally plaintiffs who do not prevail end up paying nothing. Thus, any additional costs are not likely to result in any additional "injury" to the Plaintiffs themselves.

### 3.    *A Stay Will Substantially Prejudice the Defendants.*

As discussed above, § I.A., *supra,* staying the individual cases will result in substantial prejudice to Defendants.

### 4.    *A Stay is not in the Public Interest.*

Furthermore, a stay is not in the interest of the public. The decertification of this case has left 204 individual lawsuits currently pending before this District

Court. The public has an interest in the Court being able to clear its docket, and staying these cases while Plaintiffs prosecute an unwinnable appeal does not serve that interest. *See Solis v. Washington*, No. C08-5479BHS, 2010 WL 1708831, at *6 (W.D. Wash. Apr. 27, 2010) (denying stay in FLSA overtime action because the stay "would unnecessarily delay this litigation, which would be against the public interest").

### 5. *The Equities Favor Denial.*

This Court must also consider whether the "balance of the equities weighs heavily in favor of granting the stay." *See United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992). In this case, the equities do not weigh heavily in favor of granting the stay.

As discussed above, § I.A., *supra,* plaintiffs' 150-day delay in filing this Motion was unwarranted, unexplained, and resulted in prejudice to defendants. In light of that delay, this Court should conclude that the balance of the equities weighs in favor of denying the motion to stay.

### III.   Plaintiff's Unidentified Request for Protective Order Should Be Denied.

In the title of their motion and in the last sentence of the first paragraph of their motion, Plaintiffs indicate that they seek a protective order as alternative relief.  However, Plaintiffs fail to mention a protective order elsewhere in their motion.  They do not indicate the subject matter of the protective order they seek,

and they do not indicate on what legal basis they are entitled to a protective order. As a result, this Court should conclude that Plaintiffs have waived that argument. *See Chaverst v. Astrue*, No. 2:11-CV-2785-RDP, 2012 WL 5379063, at *6 (N.D. Ala. Oct. 31, 2012) ("[I]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (quotations omitted). And this Court should conclude that Plaintiffs are not entitled to a protective order.  If the Court permits Plaintiffs further briefing on the protective order issue, Defendants request they be allowed to file an additional brief in response.

## CONCLUSION

After analyzing the evidence produced, this Court determined that decertification was required, and that, "[b]y decertifying the class, the court is saving the parties' the time and expense of trying to litigate a case collectively that should have been litigated individually at the outset." (Doc. 166 at 40).  Although certain former opt-in Plaintiffs have appealed that decision, it is unlikely they will prevail on appeal.  And although they seek a stay of the 204 individual lawsuits pending before this Court, they have not shown that permitting those lawsuits to continue during the pendency of the appeal will result in irreparable harm. Furthermore, continued delay in litigating these individual lawsuits will be prejudicial to the Defendants and harmful to the public interest.   And the

substantial delay between the filing of the appeal and the seeking of this stay weighs in favor of its denial.  Therefore, the Defendants request that this Court deny Plaintiffs' motion for stay pending appeal and deny the alternative motion for a protective order.

/s/Ronald W. Flowers, Jr.
John J. Coleman, III (COL044)
Marcel L. Debruge (DEB006)
Ronald W. Flowers, Jr. (FLO031)
Kathryn M. Willis  (MOR130)
Ronald S. Williams (WIL379)
Attorneys for Defendant
Honda Manufacturing of Alabama, LLC

**OF COUNSEL:**
BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

/s/David J. Middlebrooks
David J. Middlebrooks
Whitney R. Brown
Attorneys for Defendant
Elwood Staffing Services, Inc.

**OF COUNSEL:**
Lehr, Middlebrooks & Vreeland, P.C.
2021 Third Avenue North
PO Box 11945
Birmingham, Alabama  35202-1945

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served on the following by electronic filing which will delivery a copy of the foregoing to the following, on this the 17th day of January 2013:

Robert Camp
The Cochran Firm, P.C.
505 North 20th Street, Suite 825
Birmingham, Alabama 35203

Robert L. Wiggins
Candis A. McGowan
Jacob A. Kiser
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203

David J. Middlebrooks
Whitney R. Brown
LEHR, MIDDLEBROOKS & VREELAND, P.C.
2021 Third Avenue North
PO Box 11945
Birmingham, AL  35202-1945

/s/Ronald W. Flowers, Jr._____
OF COUNSEL